NOT DESIGNATED FOR PUBLICATION

No. 118,314

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JERRICK PHILLIPS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Ellis District Court; BLAKE BITTEL, judge. Opinion filed April 12, 2019. Reversed and remanded.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., PIERRON, J., and MCANANY, S.J.


PER CURIAM:  A district court should grant a mistrial when there is a fundamental failure in a proceeding that makes it impossible to proceed without injustice. Jerrick Phillips argues that the district court should have ordered a mistrial when the judge informed the jury, contrary to the pretrial order, that Phillips had a prior conviction for unlawful possession of a controlled substance. We agree that this constituted a fundamental failure in the proceeding. In a status case, where an element of an offense is a person's status as a convicted felon, it is error for the court to reveal the nature of the defendant's underlying offense. Accordingly, the district court abused its discretion in refusing to grant a mistrial.

1

Phillips also argues that the district court erred in allowing the State to amend the complaint on the day before trial. Because Phillips' defense to the additional charges was the same as his defense to the original charge, we find the amendment was not unduly prejudicial.

Finally, Phillips argues that the State presented insufficient evidence that he possessed marijuana because the State did not chemically test the substance it claimed was marijuana. But circumstantial evidence is enough to prove the identity of a drug even if the State does not chemically test it. We find that there was sufficient circumstantial evidence here for the jury to conclude beyond a reasonable doubt that the substance was marijuana.

FACTUAL AND PROCEDURAL HISTORY

Jarret Sanders, a former police officer for the City of Hays, was on patrol when he observed Derrick Turner walking down the street. Turner had an outstanding warrant. Turner entered a house located on East 22nd Street. Sanders contacted backup and then went up to the house. Dennis Robinson answered the door. Robinson told Sanders that he just woke up and that Turner was not in the house, but Turner soon came out of a back room and approached the front door. While Sanders was standing at the front door, he smelled the odor of marijuana coming from inside the residence. Sanders entered the house and arrested Turner and Robinson. They were the only adults present at the house.

The police got a warrant to search the house for marijuana and drug paraphernalia. Several officers participated in the search. The house had two bedrooms. One bedroom belonged to Alan Williams. The police believed the other bedroom belonged to Phillips. Officer Sanders explained that he believed it was Phillips' bedroom because they found Phillips' Louisiana state identification card in the room. The identification card expired seven days before the search. Police also located a handwritten job application completed

2

by Phillips, as well as mail addressed to both Phillips and Williams. However, no one noted how old the mail was and the job application was undated.

During the search, police found several contraband items. In the kitchen, police found a tray with a digital scale and marijuana residue and a bag containing marijuana in a box of sandwich bags in the kitchen drawer. In a cabinet in the laundry area off of the kitchen, police found a glass pipe and a glass bong. Drug users commonly use these items to ingest marijuana. In Williams' bedroom, police found a Regent .45 caliber handgun and a magazine containing ammunition. They also found rolling papers and a sticker that says, "'Keep calm and rip the bong.'" Finally, in the room police attributed to Phillips they found a Ruger .22 caliber handgun and ammunition. The law did not allow Phillips to possess a firearm because he was on probation for a felony conviction. The police performed a field test on the marijuana but did not send it to the lab for confirmation testing. The police did not obtain fingerprints from any of the items found.

Officer Sanders arrested Williams for marijuana possession and possession of drug paraphernalia. Williams admitted to Sanders that he was a marijuana smoker. Williams also claimed ownership of the Regent .45 found in his bedroom but denied knowledge of the Ruger .22.

The State initially charged Phillips with felony possession of marijuana and criminal possession of a firearm by a convicted felon. At the preliminary hearing, the district court found that probable cause existed to bind Phillips over on the criminal possession of a firearm charge. The court found that the State did not provide sufficient evidence to establish probable cause on the marijuana possession charge because the State did not officially test the substance found in the house. The only evidence that the State presented that the substance was in fact marijuana was the officer's training and experience.

About five months later, the State filed an amended complaint. The amended complaint listed only one charge—criminal possession of a firearm by a convicted felon. At arraignment, Phillips pleaded not guilty to the charge. The court scheduled a two-day trial. The pretrial order lists the only pending charge as one count of criminal possession of a firearm by a felon.

Two weeks after the pretrial order was filed and eight days before trial, the State moved to amend the complaint. The State sought to add a charge for misdemeanor possession of marijuana and possession of drug paraphernalia. The State noted that "the discovery and reports indicate that marijuana, and various drug paraphernalia were discovered within a communal location in the residence (kitchen) and therefore, this additional charge constitutes no unfair surprise to the defendant and does not prejudice his rights." The parties convened for a hearing the day before the trial. At this hearing, defense counsel said that he did not agree to the State's request to amend the complaint, but that he did not object to it either. The court allowed the amendment. On the first day of trial, the State filed the amended complaint charging Phillips with criminal possession of a firearm by a convicted felon, possession of drug paraphernalia, and misdemeanor marijuana possession.

Before trial, the defense asked the court to prohibit the State from mentioning that Phillips was on probation for another crime when he allegedly committed the new crime. Phillips agreed to stipulate that he could not legally be in possession of a firearm. The State agreed that such a course of action would be appropriate. The court held that "the State will not introduce evidence of the defendant's prior conviction and the defendant will stipulate and will inform the jury that he was not entitled to be in possession of a firearm."

The issue arose again on the eve of trial. The court stated that it intended to instruct the jury that Phillips stipulated to the convicted felon element of the charge for

4

criminal possession of a firearm. Phillips objected, stating his concern "that the mere mention of the word convicted felon already puts a preponderance and a presumption on my client that he is guilty of the crime in fact charged here." Phillips again offered to stipulate that it was not legal for him to possess a firearm. He did not believe it was pertinent for the jury to know why he was not allowed to own a firearm. The court concluded that it would inform the jury that Phillips was a convicted felon, but that it would not reveal why he was a convicted felon. The pretrial order specified that the "**Defendant stipulated Defendant could not possess a firearm. State will not introduce evidence of Defendant's prior conviction unless defendant 'opens the door.'**"

> When giving introductory instructions to the jury, the district court told the jury:

> "[T]he defendant in this case, Mr. Phillips, he's been charged with criminal possession of a weapon by a convicted felon. He pleads not guilty to that count. To establish that charge each of the following claims must be proved: 1, the defendant possessed a weapon, here a .22 caliber Smith and Wesson; 2, *the defendant within ten years preceding such possession has been convicted of unlawful possession of controlled substance*; 3, the defendant was not found to be in possession of a firearm at the time of the prior crime and has not had a prior conviction expunged or been pardoned for such crime; and 4, the act occurred on or about the 8th day of August, 2016 in Ellis County, Kansas." (Emphasis added.)

At this point, Phillips objected outside the presence of the jury. Phillips moved for a mistrial because the court informed the jury that he had been convicted of unlawful possession of a controlled substance when the parties agreed that Phillips would simply stipulate that he was a convicted felon. The prosecutor agreed that the instruction should have been limited to informing the jury that Phillips was a convicted felon.

5

The district court denied the motion for mistrial. To cure its error, the court asked the jury to disregard the instruction. The court then instructed the jury that the elements of the charge were: "1, the defendant possessed a weapon; 2, that he is a convicted felon, which the parties in this matter have agreed to by stipulation; and 3, that the act occurred on or about the 8th day of August, 2016." The court repeated this instruction when reading the jury instructions.

During trial, the parties disputed whether Phillips lived at the house on East 22nd Street. Phillips denied that he lived at the house on the day of the search. He testified that he was living at a different residence with Abigail Buchholz, the mother of his child. He believed he left the house around May 2016 to move in with Buchholz. Phillips decided to move because Buchholz was pregnant and the couple wanted to find a place where they could be together to raise their son. When Phillips did live at the house, he lived with Williams. Phillips testified that he moved out of the house in May 2016. Williams corroborated Phillips' story, testifying that they moved into the house around April 2016 and that Phillips moved out a month or two later. Robinson also testified that Phillips did not live at the house at the time of the search. Robinson occasionally slept in the bedroom that the police believed was Phillips'. Robinson would stay at the house around two to four days per week. Robinson had been at the house the day before the search and said that he did not see Phillips. Officer Sander's disputed this testimony, saying that he asked Robinson whether Phillips lived at the house and that Robinson revealed that Phillips did live there.

Phillips did sometimes visit the house. Corporal David Gilliland, who lives just across the street from the house, testified that he had seen Phillips at the house several times between May 2016 and the search. Officer Sanders testified that Phillips had been at the house on August 7, the day before the search. On the jail booking sheet, where arrestees handwrite their personal information, Phillips listed his address as the East 22nd

6

residence. When Sanders arrested Phillips two days later after the search, Phillips again wrote his address as the East 22nd residence.

As for the .22 Ruger, Phillips denied ever seeing the gun at the house. Phillips told Officer Sanders that the gun belonged to Robinson. Robinson also told Officer Sanders that the gun belonged to him. Robinson explained that he had the gun with him at the house because he was planning to go shooting with some friends at a family farm.

About the expired identification card, Phillips explained that it was a state identification card from his home state of Louisiana. He moved to Kansas from Louisiana several years ago. When he moved to Kansas, he got a Kansas identification card. He did not know that his Louisiana identification card was at the house. He thought he lost it.

The jury found Phillips guilty on all three counts.

The district court sentenced Phillips to 18 months' imprisonment for the criminal possession of a firearm conviction, three months for the marijuana possession conviction, and three months for the drug paraphernalia conviction. The court ordered the sentences to run concurrently.

Phillips appealed.

ANALYSIS

*The district court erred in denying Phillips' motion for a mistrial.*

Phillips argues that the district court abused its discretion in denying his motion for mistrial. He asserts that the district court's statement to the jury that he had been

convicted of unlawful possession of a controlled substance caused a fundamental failure in the trial that made it impossible to continue without injustice. We agree.

A district court "may terminate the trial and order a mistrial at any time that he finds termination is necessary because . . . [p]rejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution." K.S.A. 22-3423(1)(c). Courts applying this statute must engage in a two-step analysis. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2001), *cert. denied* 565 U.S. 1221 (2012). First, the court must determine if there was a fundamental failure in the proceeding. Second, if there is a fundamental failure the "court must assess whether it is possible to continue the trial without an 'injustice.'" 292 Kan. at 550. "This means . . . that if there is prejudicial conduct, the trial court must determine if the damaging effect can be removed or mitigated by an admonition or instruction to the jury. If not, the trial court must determine whether the degree of prejudice results in an injustice and, if so, declare a mistrial." 292 Kan. at 550.

On appeal of a criminal case, we review a trial court's evaluation of the two-step process provided in K.S.A. 22-3423(1)(c) under an abuse of discretion standard. Judicial discretion is abused if the judicial decision (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Moyer*, 306 Kan. 342, 355-56, 410 P.3d 71 (2017).

The Kansas Supreme Court delineated the procedure a district court must follow in "status" cases, where an element of the offense is a person's status as a convicted felon, in *State v. Lee*, 266 Kan. 804, Syl.¶ 4, 977 P.2d 263 (1999). There, a jury convicted Amoneo D. Lee of first-degree murder and criminal possession of a firearm. Lee offered to stipulate to the fact that he had a felony conviction so that the jury would not discover that the prior charge for which he was convicted was aggravated battery. The district court denied his request and he appealed. He argued "that because he offered to stipulate

8

to the prior felony conviction of aggravated battery, it was error for the district court to admit evidence of the conviction." 266 Kan. at 808.

On appeal, "Lee suggest[ed] that Kansas law should be changed to conform to *Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997)." *Lee*, 266 Kan. at 809. We will pause to discuss the facts in *Old Chief*.

A jury convicted Johnny Lynn Old Chief of possession of a firearm by a convicted felon. Old Chief asked the court to exclude evidence of his prior convictions except for a simple statement that he had been convicted to a crime punishable by imprisonment for a term exceeding one year. The Assistant United States Attorney objected to the proposed stipulation, "insisting on his right to prove his case his own way." 519 U.S. at 177. The district court agreed with the government. At trial, the government introduced the order of judgment and commitment for Old Chief's prior conviction. The order showed that Old Chief had been convicted of assault resulting in serious bodily injury and that he had been sentenced to five years' imprisonment. Old Chief appealed, and the Ninth Circuit affirmed. The United States Supreme Court granted Old Chief's petition for writ of certiorari and reversed the judgment of the lower courts. 519 U.S. at 177-78.

The Supreme Court's analysis involved interpreting the Federal Rules of Evidence. 519 U.S. at 178. "The principle issue [was] the scope of a trial judge's discretion under Rule 403, which authorizes exclusion of relative evidence when its 'probative value is substantially outweighed by the danger of unfair prejudice . . . .' Fed. Rule Evid. 403." 519 U.S. at 180. The Court stated that "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." 519 U.S. at 180. The Court then turned to the specific crime on appeal: possession of a firearm by a convicted felon. It noted that in proving this crime "and its prior-conviction element, there can be no question that evidence of the name or nature of

9

the prior offense generally carries a risk of unfair prejudice to the defendant." 519 U.S. at 185. This risk varies from case to case, "but will be substantial whenever the official record offered by the Government would be arresting enough to lure a juror into a sequence of bad character reasoning." 519 U.S. at 185. The risk is "especially obvious" where the prior conviction was for a gun crime or for a crime similar to other charges pending in a case. 519 U.S. at 185. The Court held that the district court abused its discretion in refusing to allow Old Chief to stipulate to the prior conviction because the risk of unfair prejudice substantially outweighed the probative value of the record of Old Chief's prior conviction. 519 U.S. at 191.

In *Lee*, the Kansas Supreme Court found the *Old Chief* rationale persuasive, although it noted that *Old Chief* was interpreting the Federal Rules of Evidence and was not binding on Kansas courts. 266 Kan. at 811. The court adopted a new procedure to deal with the issue. Under this procedure, when the State charges a defendant with criminal possession of a firearm, the district court must approve a stipulation that the defendant is a prior convicted felon. The court should not disclose the nature of the prior conviction to the jury. 266 Kan. at 815-16. The district court judge should only instruct the jury that the convicted status element of the crime has been proven by agreement of the parties in the form of a stipulation. 266 Kan. at 816. Applying the new principles, the Kansas Supreme Court held that the district court abused its discretion when it refused Lee's offer to stipulate to the fact of the prior conviction. 266 Kan. at 814. That said, the court found without elaboration that the error was harmless because "[t]he result would not have been different if the prior conviction had come in by stipulation." 266 Kan. at 814.

This case presents a slightly different situation. The district court did not prohibit Phillips from entering a stipulation. But by informing the jury that Phillips had a prior conviction for marijuana possession the district court defeated the purpose of the stipulation. The risk of prejudice here is the same as the risk when the court allows no

10

stipulation. In both instances the jury is informed of the nature of the underlying felony. When a district court refuses to allow a defendant to stipulate to the fact of a prior conviction the district court abuses its discretion by creating a risk of undue prejudice. Even though the district court mistakenly revealed Phillips' prior conviction to the jury, the mistake created the same risk of undue prejudice. As a result, we find that the first part of the mistrial statute is satisfied—there was prejudicial conduct that caused a fundamental failure in the proceedings.

The second step of applying the mistrial statute is determining whether the error made it impossible to proceed without injustice. K.S.A. 22-3423(1)(c). "To determine whether an error makes it impossible to proceed with the trial without injustice, a trial court must assess whether the fundamental failure affected a party's substantial rights, which means it will or did affect the outcome of the trial in light of the entire record." *Ward*, 292 Kan. at 569. Phillips asserts that the district court's error violated his constitutional right to a fair trial. When an error infringes on a party's federal constitutional right, a court will declare a constitutional error harmless only when the party benefiting from the error persuades the court "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *Ward*, 292 Kan. at 569 (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 [1967]).

The State argues that any error was harmless because the district court judge gave a curative instruction. Additionally, the court instructed the jury to base its verdict on the evidence presented at trial. We presume juries follow instructions. *State v. Race*, 293 Kan. 69, 77, 259 P.3d 707 (2011). Phillips disagrees. He argues that the degree of prejudice was too great to be cured. He notes that "[c]olorful analogies" are used to describe this problem. "[O]ne 'cannot unring a bell'; 'after the thrust of the saber it is difficult to say forget the wound'; and finally, 'if you throw a skunk into the jury box, you

11

can't instruct the jury not to smell it'." *Dunn v. United States*, 307 F.2d 883, 886 (5th Cir. 1962). We agree.

The degree of prejudice in this case was exceptionally high because the district court revealed that Phillips had a prior conviction for marijuana possession during a trial at which two of the charges related to marijuana. In *Old Chief*, the United States Supreme Court stated that the risk of prejudice is "especially obvious" in this situation. 519 U.S. at 185. Additionally, there was no "overwhelming evidence of guilt" here. See *United States v. Wacker*, 72 F.3d 1453, 1473 (10th Cir. 1995) (introduction of journal entries for predicate crime was harmless when evidence of guilt was overwhelming).

We want to point out that determining whether an error is harmless "is different from a question of whether there is sufficient evidence to sustain a conviction because considerations of harmless error necessarily involve some weighing of the evidence presented against the court's confidence that the verdict is consistent with substantial justice." *State v. Boggs*, 287 Kan. 298, 319, 197 P.3d 441 (2008). Here, the State's evidence was weak. The State presented minimal evidence that Phillips lived in the house—an expired identification card, an undated piece of mail, and an undated job application. Phillips did list the house as his residence on his jail booking sheet but testified that he was living with his girlfriend. The other occupants of the house testified that Phillips no longer lived there.

Even if Phillips did live at the house, Williams also lived in the house. "When a defendant is in nonexclusive possession of the premises upon which drugs are found, it cannot be inferred that the defendant knowingly possessed the drugs unless there are other incriminating circumstances linking the defendant to the drugs." *State v. Marion*, 29 Kan. App. 2d 287, 290, 27 P.3d 924 (2001). "[M]ore than mere presence or access to the drugs has been required to sustain a conviction." *State v. Cruz*, 15 Kan. App. 2d 476, 489, 809 P.2d 1233 (1991). Additional incriminating circumstances include:

12

"'[A] defendant's previous participation in the sale of drugs, his use of narcotics, his proximity to the area where the drugs are found, and the fact that the drugs are found in plain view. Other factors noted in cases involving nonexclusive possession include incriminating statements of the defendant, suspicious behavior, and proximity of defendant's possession[s] to the drugs.' [Citation omitted]." 15 Kan. App. 2d at 489.

The State did not produce evidence at trial that Phillips used or sold drugs. Phillips was not proximate to the drugs when the police found them. In fact, he was not even in the house at the time of the search because police had arrested him the prior day. The marijuana and paraphernalia were not in plain view. Phillips did not make any incriminating statements. None of the items the State relied on to prove Phillips lived in the house—his expired state identification card, the job application, and the undated mail—was located near the marijuana or paraphernalia. With such scant evidence of possession, the State cannot convince this court that there is no reasonable possibility that the error did not affect the verdict. Accordingly, the district court abused its discretion in refusing to grant Phillips' motion for mistrial.

*The district court did not err by allowing the State to amend the complaint.*

Phillips also argues that the district court erred when it allowed the State to amend the complaint and charge him with more offenses. He asserts that the amendment prejudiced his substantial rights.

The district court can allow the State to amend a complaint "at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." K.S.A. 22-3201(e). We review whether the district court erred in allowing the State to amend the complaint for an abuse of discretion. *State v. Bischoff*, 281 Kan. 195, 205, 131 P.3d 531 (2006). The district court abuses its discretion "only when no reasonable person would take the view adopted by the district court." 281 Kan. at 205. "Our Supreme Court has consistently given considerable latitude

13

to the State in amending a complaint before trial." *State v. Calderon-Aparicio*, 44 Kan. App. 2d 830, 848, 242 P.3d 1197 (2010).

Phillips' first argument is that the district court erred by allowing the State to charge him with additional and different crimes, in violation of the plain text of K.S.A. 22-3201(e). For a majority of the case, the parties proceeded on a complaint that charged Phillips with criminal possession of a firearm by a convicted felon. The State did not move to amend the complaint until eight days before trial, and the district court allowed the amendment the day before trial. The amended complaint charged Phillips with criminal possession of a firearm by a convicted felon, possession of drug paraphernalia, and misdemeanor marijuana possession.

Clearly, possession of drug paraphernalia and possession of marijuana constitute "additional or different" crimes. K.S.A. 22-3201(e). Phillips relies on the language of K.S.A. 22-3201(e), which allows an amendment "if no additional or different crime is charged." Yet the Kansas Supreme Court has interpreted this language to mean that the State *can* charge additional or different crimes, as long as the substantial rights of the defendant are not prejudiced. *Bischoff*, 281 Kan. at 205 ("In interpreting this statute, this court has held that even the charging of a different crime may be allowed by an amendment to a complaint before trial, provided the substantial rights of the defendant are not prejudiced."). Thus, Phillips' argument is not persuasive.

The next issue is determining whether Phillips' substantial rights were violated by the amendment to the complaint. Phillips argues that his right to present a defense, as guaranteed by the Sixth Amendment to the United States Constitution, was violated by the amendment. Noting the late timing of the amendment, Phillips asserts that "[t]he sequence of events here makes it appear that the State was deliberately trying to mislead Phillips as to the charges against him so as to minimize his ability to prepare a defense."

14

Phillips' argument is much like that of the appellant in *Calderon-Aparicio*, 44 Kan. App. 2d 830. There, police found a black bag filled with marijuana near a disabled van. Ruben Calderon-Aparicio and another man owned the van. The State charged Calderon-Aparicio with possession of marijuana with intent to sell. Three days before trial, the State amended the complaint to charge Calderon-Aparicio with possession of marijuana with the intent to sell, distribute, or deliver. A jury found Calderon-Aparicio guilty of the charge. On appeal, Calderon-Aparicio argued that that the amendment of the complaint substantially prejudiced his right to prepare a defense. This court rejected his argument:

> "Although Calderon-Aparicio asserts in his appellate brief that the amendment of the complaint 3 days before trial did not provide him with sufficient opportunity to prepare a proper defense against the new charge of delivery, he does not detail how his defense would have changed to meet the amendment. Calderon-Aparicio's defense at trial was that he never possessed the black bag with the marijuana and never placed the bag in the drainage pipe. Based on the evidence in the case, it would be difficult to ascertain how Calderon-Aparicio would have changed or modified his defense." 44 Kan. App. 2d at 849.

A similar situation exists here. While Phillips asserts that he was unable to prepare an adequate defense given the amended complaint, he fails to explain how his defense would have changed. Phillips' defense was that he did not live in the house. As in *Calderon-Aparicio*, it is difficult to determine how Phillips would have changed his defense because of the new charges. As a result, we cannot say no reasonable person would have disagreed with the district court's decision to allow the State to amend the complaint.

*There was sufficient evidence to convict Phillips of marijuana possession.*

Phillips argues that there was insufficient evidence for the jury to convict him of marijuana possession. The State did not perform laboratory testing of the substance it alleged was marijuana. Because of this, the district court held that the State did not

provide sufficient evidence to establish probable cause on the marijuana possession charge. The district court refused to bind over Phillips on the marijuana possession charge because of the lack of laboratory testing. The State amended the complaint and removed the marijuana charges, leaving only the criminal possession of a firearm charge. Later in the case, however, and without additional evidence, the district court allowed the State to charge Phillips with marijuana possession once again. Phillips now asks: If the State presented insufficient evidence to establish probable cause that he committed the crime, how can a jury looking at the same evidence find that he committed the crime beyond a reasonable doubt? Phillips asserts that the State failed to prove the identity of the substance beyond a reasonable doubt and that his conviction must be reversed as a result.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

While scientific chemical analysis of a substance provides the most reliable evidence as to the identity of the substance, "proof of the identity of a substance by circumstantial evidence may be sufficient in a drug prosecution where no chemical tests are admitted or available." *State v. Northrup*, 16 Kan. App. 2d 443, 449, 825 P.2d 174 (1992). In *Northrup*, Clayton Northrup made an argument like Phillips' that there was insufficient evidence to sustain his conviction for sale of marijuana because the State did not perform laboratory testing of the substance it alleged was marijuana. This court affirmed Northrup's conviction, holding that there was enough circumstantial evidence to prove the identity of the marijuana beyond a reasonable doubt. 16 Kan. App. 2d at 452. The evidence showed that a police informant asked Northrup for marijuana. Northrup told the informant that it would cost $120 per ounce and he would have it ready in 30 to

16

45 minutes. When the police intervened, a detective performed a field test on the substance. The detective believed the substance was marijuana. Northrup admitted that he obtained and sold marijuana to the informant and that he would not have given the informant anything that was not marijuana. The court held that "[t]here was strong and considerable evidence to indicate the substance was marijuana, and there was absolutely no evidence to suggest it could have been anything else." 16 Kan. App. 2d at 452.

Here, there is also sufficient circumstantial evidence to show that the substance was marijuana. First, Officer Sanders smelled marijuana emanating from the house. He was certified in detecting the odor of marijuana through the Kansas Law Enforcement Training Center. Additionally, he often came into contact with marijuana as a patrol officer. There were marijuana smoking devices, including pipes, rolling papers, and cigarillos, throughout the house. The police performed a field test on the substance. Finally, when Officer Sanders arrested Williams for marijuana possession, Williams told Officer Sanders that he was a marijuana smoker. Taken together, this circumstantial evidence was sufficient to prove the identity of the substance as marijuana.

Reversed and remanded.